UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTONIO D. McCLAIN,

    *Plaintiff*,

v.                                                    CASE NO. 11-CV-14983

COMMISSIONER OF                   DISTRICT JUDGE DAVID M. LAWSON
SOCIAL SECURITY,                   MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**[1]

**I.    RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

**II.    REPORT**

    **A.    Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claims for Supplemental Security Income ("SSI")

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 13,[2] 16.)

Plaintiff was 23 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 7 at 44.) Plaintiff's employment history includes work as a caregiver for one year and as a telemarketer for two months. (Tr. at 116.) Plaintiff filed the instant claim on August 28, 2008, alleging that he became unable to work on July 28, 2008. (Tr. at 86.) The claim was denied at the initial administrative stages. (Tr. at 60-61.) In denying Plaintiff's claims, the Commissioner considered blindness, low vision, and affective disorders as possible bases for disability. (*Id.*)

On June 22, 2010, Plaintiff appeared before Administrative Law Judge ("ALJ") Elliott Bunce, who considered the application for benefits *de novo*. (Tr. at 12-21, 39-59.) In a decision dated October 25, 2010, the ALJ found that Plaintiff was not disabled. (Tr. at 21.) Plaintiff requested a review of this decision and the ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on September 6, 2011, when the Appeals Council denied Plaintiff's request for review. (Tr. at 1-4.) On November 10, 2011, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

### B.     Standard of Review

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is

---

[2] I note that Plaintiff's brief is docketed as "Motion to Amend/Correct Motion for Summary Judgment," but the title of the document is "Motion for Summary Judgment." (Doc. 13.)

multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making

3

a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting SSR 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence

4

without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

### C.     Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits ("DIB") program of Title II, 42 U.S.C. §§ 401 *et seq.*, and the Supplemental Security Income ("SSI") program of Title XVI, 42 U.S.C. §§ 1381 *et seq.* Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe

impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work[.]" *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

    **D.**    **ALJ Findings**

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff, born on November 3, 1986, had not attained age 22 as of July 28, 2008, the alleged onset date. (Tr. at 17.) The ALJ further found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of July 28, 2008. (*Id.*) At step two, the ALJ found that Plaintiff's residual effects of gunshot wounds and depression were "severe" within the

6

meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 17-18.) At step four, the ALJ found that Plaintiff does not have any past relevant work. (Tr. at 19.) The ALJ also found that Plaintiff was a younger individual – age 18 to 49 – on the alleged disability onset date. (*Id.*) At step five, the ALJ found that Plaintiff could perform a limited range of light work. (Tr. at 18-20.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 21.)

### E. Administrative Record

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff sought medical treatment after he "put [his] hand through [a] window" on July 31, 2007. (Tr. at 215.) Plaintiff's wound was dressed and he was discharged. (Tr. at 217.)

Plaintiff was treated for gunshot wounds in 2008 at the University of Michigan Hospital (Tr. at 152-239) and at the Community Health Center. (Tr. at 240-65.) Plaintiff indicated that he "was just walking down the road minding his own business when a car pulled up and shots were fired." (Tr. at 196.) On July 29, 2008, Plaintiff was transferred to the University of Michigan Hospital from Lansing for "multiple gun shot wounds." (Tr. at 156.) Plaintiff suffered a ruptured globe and orbital wall fractures to his left eye (Tr. at 157), bilateral bullet wounds to the legs (Tr. at 164) and a fractured right fibula. (Tr. at 160, 173.) Although Plaintiff had bilateral leg wounds, there was "[n]o fracture or dislocation of the left humerus" or the "distal left femur and left tibia and fibula." (Tr. at 187.) At the time he received the wounds, Plaintiff was a "caregiver for his sister" and was the father of an 11-month-old child. (Tr. at 172.)

Unfortunately, Plaintiff's left eye "could not be saved due to the degree of severe injury" so a "decision was made to enucleate the eye." (Tr. at 167.) Therefore, Plaintiff does not have any vision in his left eye. On September 11, 2008, the plastic surgeon that rebuilt the area around

Plaintiff's left eye indicated that Plaintiff was "doing well and is quite stable" and that Plaintiff should return in six months. (Tr. at 186, 250.) Also on September 11, 2008, Plaintiff sought emergency room treatment for acute right foot pain after he slid down some stairs; x-rays showed "no signs of fracture" and he was discharged. (Tr. at 211, 340.)

Since Plaintiff continued to experience pain in his left eye area, Plaintiff underwent an "orbitotomy with release of lateral rectus muscle and removal of bullet fragments" and "[r]econstruction of the left lateral orbital wall defect" on December 12, 2008. (Tr. at 282.)

On February 3, 2009, Plaintiff was examined at the request of Disability Determination Services ("DDS") by Michael Brady, Ph.D. (Tr. at 293-96.) Dr. Brady diagnosed "Major Depressive Disorder, recurrent, moderate," assessed a GAF score of 60 and gave a "guarded" prognosis. (Tr. at 296.)

On August 4, 2009, Plaintiff sought treatment in the emergency room for a gunshot wound to his left thigh. Plaintiff "states that he heard his dogs barking, went to check what was going on outside, saw 2 males walking outside, turned back into the house when he heard 4 gunshots go off and sustained an injury to his left leg." (Tr. at 347.) The bullet "grazed the left upper portion of his thigh." (Tr. at 349.) An x-ray of his left leg was unremarkable and a CT scan showed no vascular injury. (Tr. at 348.) Plaintiff was "advanced to regular activity, which he tolerated well" and was "cleared for discharge subsequent to this on August 4, 2009." (Tr. at 355.)

A Mental Residual Functional Capacity ("RFC") Assessment completed on February 7, 2009, by Bruce C. Douglass, Ph.D., found that Plaintiff was moderately limited in his ability to understand and remember and carry out detailed instructions, the ability to maintain attention and concentration for extended periods, and the ability to complete a normal work-day and week without interruptions from psychologically based symptoms, but was otherwise not significantly

8

limited in understanding, memory or sustained concentration and persistence. (Tr. at 298-99.) The assessment also concluded that Plaintiff was moderately limited in his ability to interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, but was otherwise not significantly limited in social interaction or adaptation. (Tr. at 299.) The assessment concluded that although Plaintiff "will have trouble keeping up in demanding work settings . . . [he] retains the capacity to perform simple, routine, 2-step tasks on a sustained basis." (Tr. at 300.)

A Psychiatric Review Technique was completed by Dr. Douglass on the same day diagnosed affective disorders, i.e., major depressive disorder. (Tr. at 302, 305.) Plaintiff was found to be moderately limited in maintaining social functioning and only mildly limited in activities of daily living and maintaining concentration, persistence or pace. (Tr. at 312.)

A Physical RFC Assessment completed by Terri Rytkonen on February 9, 2009, concluded that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk for about 6 hours in an 8-hour workday, sit for about 6 hours in an 8-hour workday, and was limited in left upper and right lower extremities to occasional pushing or pulling. (Tr. at 317.) It was also determined that Plaintiff should never climb ladders, ropes or scaffolds, but had no manipulative limitations. (Tr. at 318-19.) As to visual limitations, it was noted that Plaintiff had limited depth perception and field of vision, but there were no communicative limitations established. (Tr. at 319-20.) It was also noted that Plaintiff should avoid concentrated exposure to extreme cold, heat, noise, fumes, and hazards because of Plaintiff's reported migraine headaches. (Tr. at 320.) The assessment concluded that Plaintiff "is still in the healing period and can reasonably be expected to continue to improve." (Tr. at 323.)

A Medical Source Statement (Mental) completed by Georgia Cronic, Ph.D., on May 10, 2010, listed diagnoses of PTSD related to multiple gunshot wounds and depressive disorder, and concluded that Plaintiff was extremely limited in the ability to maintain concentration and attention for at least two hour increments and the ability to withstand the stress and pressures with an eight-hour work day and day-to-day work activity and was markedly limited in all other areas. (Tr. at 365.) Another Medical Source Statement (Mental) completed on May 10, 2010, by Dr. Moliterno diagnosed severe depression and found Plaintiff markedly limited in all areas. (Tr. at 366.)

At the administrative hearing, the ALJ asked the vocational expert ("VE") to consider a person with Plaintiff's background who is "able to perform work at the light exertional level, that does not expose the worker to hazards occasioned monocular vision, and that does not require interaction with the public to perform job duties." (Tr. at 55.) The VE responded that there are light, unskilled jobs available in the region and nationally, respectively, i.e., 4,000 and 140,000 dishwasher jobs, 1,500 and 70,000 male clerk jobs, and 4,200 and 190,000 stock clerk jobs. (Tr. at 55.) When asked, the VE further testified that there would be 3,100 and 136,000 general office clerk jobs, 1,800 and 98,000 machine operator jobs, and 1,300 and 42,000 packer jobs in the sedentary, unskilled category, in the regional and national economies, respectively. (Tr. at 56.) The ALJ asked if the VE's testimony was consistent with the Dictionary of Occupational Titles and the VE responded that it was. (*Id.*)

### F. Analysis and Conclusions

#### 1. Legal Standards

The ALJ determined that during the time Plaintiff qualified for benefits, she possessed the residual functional capacity to perform a limited range of light work. (Tr. at 18-20.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may

10

> be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

### 2. Substantial Evidence

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. (Doc. 13.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Specifically, Plaintiff contends that the ALJ's RFC analysis and hypothetical did not account for Plaintiff's marked limitations in concentration, persistence and pace and ability to withstand stress and pressure associated with an eight-hour workday as described by Plaintiff's treating physicians Dr. Conic and Dr. Moliterno. (Doc. 13 at 6-12; Tr. at 365, 366.) Relatedly, Plaintiff contends that the ALJ failed to properly assess and explain the weight given treating source opinions, i.e., the opinions of Drs. Conic and Moliterno. (Doc. 13 at 13-15.)

The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not

11

inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2). If the ALJ declines to give controlling weight to a treating source's opinion, then he must use the following factors to determine what weight the opinion should be given: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson*, 378 F.3d at 544. Where the ALJ "failed to conduct the balancing of factors to determine what weight should be accorded these treating source opinions . . . , [t]his alone constitutes error, as '[a] finding that a treating source medical opinion . . . is not entitled to controlling weight [does] not [mean] that the opinion should be rejected.'" *Cole v. Comm'r of Soc. Sec.,* 652 F.3d 653, 660 (6th Cir. 2011) (quoting *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009)).

A physician qualifies as a treating source if the claimant sees the physician "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. § 404.1502. After treating sources, a "nontreating source, who physically examines the patient 'but does not have, or did not have an ongoing treatment relationship with' the patient, falls next along the continuum." *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 439 (6th Cir. 2012) (quoting *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007)). "The opinion of a non-examining physician, on the other hand, 'is entitled to little weight if it is contrary to the opinion of the claimant's treating physician.'" *Adams v. Massanari*, 55 F. App'x 279, 284 (6th Cir. 2003) (quoting *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987)).

12

"Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, at *5 (1996). *See also Rogers*, 486 F.3d at 242. "This requirement is not simply a formality; it is to safeguard the claimant's procedural rights." *Cole*, 2011 WL 2745792, at *4. "[A] failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

I suggest that the ALJ properly considered but discounted Dr. Cronic and Dr. Moliterno's Medical Source Statements which concluded that Plaintiff was extremely and markedly limited in all mental functional areas. (Tr. at 19-20, 365, 366.)

Plaintiff apparently began seeing Dr. Conic "recently" before the hearing because she agreed to see him without pay. (Tr. at 52-53.) As stated by the ALJ, Dr. Conic makes no references to medical records nor did he explain the basis for his findings and the record contains no such medical evidence. (Tr. at 20.) In addition, the ALJ noted that although "the record was left open for the provision of records from Dr. Conic's facility, [] these have not been provided." (Tr. at 20.)

As to Dr. Moliterno, although Plaintiff was treated by at the David Gamez Community Center, the record does not show any specific notes or other treatment rendered specifically by Dr. Moliterno. (Tr. at 341-46, 356-64.) The records are rudimentary one-page handwritten checklists

13

that list each of the medical areas assessed and allow the medical care person to circle areas examined and their status. The forms appear to be filled out by various persons, including nurses, and the signatures of the doctors are undecipherable so it is not clear what attention Dr. Moliterno personally gave to Plaintiff. I therefore suggest that it is not clear whether Dr. Moliterno was a treating physician at all as that term is defined in 20 C.F.R. § 404.1502. Even assuming that he was a treating source, I suggest the ALJ properly discounted his opinion. The notes contained in the above-cited portions of the transcript refer mostly to adjusting medication levels for migraine headaches and consistently indicate, if evaluated, that Plaintiff was "oriented x3" and that all neurological testing was intact. (Tr. at 341-43, 345, 356-58, 361-62.) There was only a passing reference to depression and the start of prescription medication for that condition on December 17, 2008. (Tr. at 345.) I therefore suggest that even if the notes are attributable to Dr. Moliterno, they do not provide any support for the conclusions stated on the Medical Source Statement which found Plaintiff markedly limited in all mental functional areas. (Tr. at 366.)

I further suggest that substantial evidence supports the ALJ's treatment of the statements by Drs. Conic and Moliterno. Where, as here, "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it," remand would be "an idle and useless formality." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004).

I also suggest that the hypothetical posed to the VE properly incorporated the limitations found in the RFC assessments (Tr. at 298-300, 317-23), and was in harmony with the objective record medical evidence. *See Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

  **3.  Conclusion**

For all these reasons, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

**III.   REVIEW**

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                              s/ 𝕮𝖍𝖆𝖗𝖑𝖊𝖘 𝕰 𝕭𝖎𝖓𝖉𝖊𝖗
                                              CHARLES E. BINDER
Dated: January 10, 2013                     United States Magistrate Judge

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date: January 10, 2013     By    s/Patricia T. Morris
                                 Law Clerk to Magistrate Judge Binder